IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **DEREK S. CARSENI and GLENDA P. CARSENI,** ) ) ) ) | |
| Plaintiffs, ) ) | No.: _____ |
| v. ) ) | |
| **BRANDI PROFFITT and TIMOTHY PROFFITT, in their individual capacities And doing business as PROFFITT CUSTOM BUILDERS,** ) ) ) ) ) | |
| Defendants. | |

## COMPLAINT

Come now Plaintiffs, Derek S. Carseni and Glenda P. Carseni (hereinafter "Plaintiffs"), by and through counsel, and for their Complaint against Defendants Brandi Proffitt, Timothy Proffitt and Proffitt Custom Builders, respectfully state unto the Court as follows:

### I. PARTIES

1. Plaintiffs Derek S. Carseni and Glenda P. Carseni are adult residents and citizens of Palm Beach County, Florida, with their permanent residence located at 8760 Wellington View Drive, West Palm Beach, Florida 33411.

2. Defendant Brandi Proffitt is an adult resident and citizen of Cocke County, Tennessee, residing at 5039 E. Parkway, Cosby, Tennessee 37722.

3. Defendant Timothy Proffitt is an adult resident and citizen of Cocke County, Tennessee, residing at 5039 E. Parkway, Cosby, Tennessee 37722.

4. Defendant Proffitt Custom Builders is a domestic business owned and operated by Defendants Timothy Proffitt and Brandi Proffitt, with a principal place of business located at 5039 E. Parkway, Cosby, Tennessee 37722.

## II. VENUE AND JURISDICTION

5. This lawsuit arises out of an agreement entered into by Derek Carseni and Glenda Carseni (hereinafter collectively "Plaintiffs") with Brandi Proffitt, Timothy Proffitt and Proffitt Custom Builders (hereinafter collectively "Defendants"), wherein Plaintiffs hired Defendants to construct a residential structure for the Plaintiffs in Sevier County, Tennessee.

6. This lawsuit involves a dispute between citizens of different states and the matter in controversy exceeds $75,000.00; therefore, pursuant to 28 U.S.C. § 1332, this civil action is subject to federal diversity jurisdiction.

7. This lawsuit involves a contract dispute over construction of a residence in Sevier County, Tennessee. Furthermore, Defendants are residents of Cocke County, Tennessee and the acts and omissions of the Defendants, which form the basis of this lawsuit, were committed in Sevier County, Tennessee. Accordingly, pursuant to 28 U.S.C § 1391, the United States District Court Eastern District of Tennessee is the appropriate venue to litigate this case.

## III. FACTS

8. In 2017, Plaintiffs purchased a lot located in the Cobbly Nob development in Gatlinburg, Tennessee – Lot Number 59, 1050 deer Path Lane, Gatlinburg, Tennessee 37738 (hereinafter the "Property").

9. In or around January 2018, Plaintiffs entered into discussions with Defendants concerning construction of a log cabin on the Property.

2

10. Plaintiffs provided design plans to the Defendants, which Defendants reviewed and utilized to provide a proposal.

11. The parties continued to discuss the construction project throughout January 2018, and on or about February 6, 2018, Defendants submitted a proposal to the Plaintiffs offering to construct a log cabin on the Property for $360,000.00. *See Exhibit A*.

12. Throughout the parties' discussions, the Defendants held themselves out as licensed general contractors and represented that they were competent, capable, insured and properly licensed contractor.

13. Defendants stated that the project would be completed within twelve (12) months.

14. The parties agreed that the Plaintiffs would provide the Defendant with periodic payments on the Project as construction progressed.

15. Acting in reliance upon the assurances and representations made by Proffitt, and based on the proposal provided to them, the Plaintiffs accepted the proposal and contracted with the Defendants to construct a log cabin on the Property for $360,000.00.

16. The parties met on February 19, 2018. During the meeting, the parties signed the agreement and Plaintiffs provided a down payment to the Defendants in the amount of $10,000.00. A copy of the signed agreement is in the possession of the Defendants.

17. On or about February 23, 2018, the Defendants applied for a building permit to the Sevier County Building Inspection Department.

18. On their building permit application, and despite the fact that they had contracted for a $360,000.00 house, the Defendants represented to the Sevier County Building Department that the cost of construction for the project was $256,000.00.

19. A building permit was issued to the Defendants by the Sevier County Building Department on March 5, 2018, but construction of the log cabin did not commence until on or about April 30, 2018.

20. From the onset of the project, Defendants were constantly behind schedule and on multiple occasions went weeks without being on the construction site.

21. Plaintiffs requested updates on construction progress and often would receive no response from the Defendants.

22. Construction delays continued throughout 2018 and up through summer 2019.

23. After the project was well underway and Plaintiffs invested significant resources, including time and money, Defendants began inflating the cost of the project with unsubstantiated requests for additional payments in excess of the contract price.

24. On several occasions the Defendants submitted additional charges above and beyond the $360,000.00 contract price to the Plaintiffs and informed the Plaintiffs that construction would cease until payment was made.

25. On June 29, 2018, Defendants informed Plaintiffs that they had misquoted the project and requested an additional $25,000.00 to continue construction.

26. Again, on April 1, 2019, Defendants demanded an additional $11,700.00.

27. All progress on the project ceased in October 2019 and by mid-October 2019, the Defendants completely abandoned the project.

28. Defendants left the project incomplete and did not take adequate measures to protect existing construction or the structure from the elements.

29. Some of the work that was completed by the Defendants, including but not limited to window installation and flooring installation, was defective and not performed in a workmanlike manner.

30. In or around late October 2019, Plaintiffs learned that the Defendants were not licensed contractors and had not been licensed to provide construction services since May 31, 2019. *See Exhibit B.*

31. Additionally, Plaintiffs learned in or around late October 2019 that, prior to expiration of the Defendants' contractor license, the monetary limit was $256,000.00 – more than $104,000.00 below the original contract price. *See Exhibit B.*

32. Plaintiffs paid the Defendants a total of $332,226.00 to construct the log cabin on the Property.

33. Plaintiffs have paid Defendants for materials that have not been provided to Plaintiffs and work that was never performed.

34. Despite receiving payment from the Plaintiffs for some work that was to be performed by subcontractors, and was in fact performed by subcontractors, Defendants have withheld payments from several of their own subcontractors, including their HVAC and electrical contractors.

35. Despite receiving payment from the Plaintiffs for materials, Defendants have withheld payments from suppliers, including the door and window supplier.

36. As of June 1, 2019, Defendants were not authorized by Tennessee law, as set forth in the Tennessee Contractor's Licensing Act codified at TENN. CODE ANN. § 62-6-101 et seq., to act as a construction contractor and/or provide residential construction services.

37. As of June 1, 2019, Defendants were not authorized by Tennessee law, as set forth in TENN. CODE ANN. § 62-6-102, to submit a price or bid or offer to construct, supervise, superintend, oversee, schedule, direct or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement or any other construction undertaking for which the total cost is twenty-five thousand dollars ($25,000) or more.

38. The contract price agreed upon by the parties exceeded the Defendants license limit by greater than 10% and therefore Defendants were unlicensed when they entered into the construction agreement with the Plaintiffs.

39. Pursuant to the Tennessee Contractor's Licensing Act of 1994, Defendants were unlicensed throughout the project.

40. On November 15, 2019, Plaintiffs notified Defendants that they were terminating the construction agreement for cause.

41. Plaintiffs hired a new contractor on November 25, 2019, to complete the construction project and correct construction defects caused by Defendants' negligence and poor workmanship.

42. Based on the known defects and incomplete work, Plaintiffs agreed to pay the new contractor $111,528.00 to complete the project.

43. Since hiring their new contractor, Plaintiffs and their contractor have discovered additional construction defects and poor workmanship attributable to the Defendants and/or their subcontractors.

44. Plaintiffs incurred substantial costs and expenses, and have been damaged as a direct and proximate result of Defendants' conduct and material breaches of the parties' contract.

## IV. CAUSES OF ACTION

a. **NEGLIGENCE:**

45. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-44 of this Complaint.

46. Defendants owed a duty to the Plaintiffs to perform construction work on the Property in accordance with reasonably accepted standards for construction in the Sevier County, Tennessee area.

47. Defendants, as the prime contractor, owed a duty to hire, oversee and manage their employees, agents and subcontractors on the project and to ensure that work performed by those individuals or entities was free of defect.

48. Defendants failed to perform their work in accordance with the applicable standard of care, and failed to manage and/or handle the work in an appropriate manner, including, but not limited to, handling and/or controlling the costs incurred in furtherance of the work in an appropriate manner.

49. Defendants failed to competently hire, oversee and/or manage their employees, agents and subcontractors on the project, which resulted in defective work.

50. Plaintiffs have been damaged in excess of $115,000.00 and it is expected the Plaintiffs will incur additional costs and expenses to complete the Project and correct defective work performed by Defendants and their subcontractors.

51. Defendants' failure to perform the work to the applicable standard of care and failure to perform their duties as the prime contractor were the direct proximate causes of the Plaintiffs' damages.

b. **BREACH OF CONTRACT:**

52. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-51 of this Complaint.

53. The Plaintiffs entered into the Agreement with the Defendants to construct a log cabin free of defect on the Property in exchange for payment of $360,000.00.

54. Defendants failed to perform the contracted work in a timely manner.

55. Defendants failed to perform the contracted work in a competent and workmanlike manner.

56. Defendants failed to perform the contracted work free of defect.

57. Defendants failed to complete the contracted work.

58. Defendants failed to maintain their contractor's license throughout the duration of the Project.

59. Defendants failed to obtain an adequate monetary contractor licensing limit to perform the contracted work in accordance with Tennessee law, including the Tennessee Contractor's Licensing Act.

60. Defendants' failures, including those set forth in the preceding paragraphs, constitutes material breaches of the parties' contract.

61. The Plaintiffs suffered damages as a result of Defendants' contract breaches.

62. Plaintiffs continue to incur additional costs and expenses as a result of Defendants' contract breaches.

### c. BREACH OF IMPLIED WARRANTY AND DUTY:

63. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-62 of this Complaint.

64. Defendants owed a duty under Tennessee law to perform the contracted work as set forth in the Agreement in a good, competent and workmanlike manner.

65. In addition to the contractual obligations, there existed an implied agreement that the work performed by Defendants would be sufficient for the particular purpose desired and to accomplish a certain result, to include providing a residential structure free of defect.

66. Defendants failed to perform the contracted work in a good and workmanlike manner.

67. Defendants failed to perform the work such that the desired purpose and result were achieved.

68. Defendants' failures constitute a material breaches of the parties' contract and the implied duties imposed by Tennessee law.

69. The Plaintiffs have suffered damages in an amount in excess $115,000 as a result of Defendants' material breaches.

70. The Plaintiffs continue to incur additional costs and expenses as a result of Defendants' material breaches.

### d. NEGLIGENT MISREPRESENTATION:

71. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-70 of this Complaint.

72. Defendants supplied false information to the Plaintiffs, including but not limited to Defendants representations that they were licensed contractors and had adequate licensing limits

9

to enter into an agreement to construct Plaintiffs' log cabin and perform construction contractor services necessary to complete the project.

73. Defendants supplied false information to the Plaintiffs, including but not limited to Defendants representations that they would maintain their license and adequate licensing limits throughout the duration of the project.

74. Defendants maintained throughout the project, including after May 31, 2019, that they were authorized to perform construction contractor services.

75. Defendants were not licensed when they entered into the agreement and did not maintain their license throughout the duration of the project.

76. Defendants' did not have adequate monetary limits when they contracted with Plaintiffs and did not obtain and maintain adequate monetary limits on their license anytime thereafter.

77. The Defendants knew or should have known that they were not licensed and did not have adequate monetary licensing limits.

78. The Defendants did not exercise reasonable care in obtaining or communicating the information concerning their license status or monetary limits to the Plaintiffs.

79. The plaintiff justifiably relied upon the information provided by the Plaintiffs concerning their license status and monetary limits.

80. Plaintiffs have suffered a pecuniary loss caused to them by their justifiable reliance upon the false information provided by the Defendants.

e. **FRAUDULENT/INTENTIONAL MISREPRESENTATION:**

81. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-80 of this Complaint.

10

82. From the time the parties began discussions and throughout the project, Defendants represented that they were licensed contractors and had adequate licensing limits to enter into an agreement to construct Plaintiffs' log cabin and perform construction contractor services necessary to complete the project.

83. The Defendants were not licensed and did not have adequate licensing limits at any time from the date the parties began discussing the project until Defendants were fired.

84. The Defendants licensing status and license monetary limits were material to Plaintiffs decision to hire the Defendants, to enter into an agreement with the Defendants and to allow them to continue working on the project.

85. The Plaintiffs knew that they were not licensed and did not have adequate monetary license limits at all times from the time the parties began discussions through the date Defendants were removed from the project.

86. The Defendants made the representations recklessly and without regard to whether the representation were true.

87. The Plaintiffs reasonably relied upon the Defendants' misrepresentations concerning their licensing status and license monetary limits.

88. The Plaintiffs suffered injury as a result of their reliance upon the Defendants misrepresentations concerning their licensing status and license monetary limits.

**f. VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT:**

89. The Plaintiffs restate and reallege each allegation set forth in Paragraphs 1-88 of this Complaint.

90. The Defendants committed various unfair and deceptive acts prior to and during the performance of its work, which the Plaintiffs discovered less than one (1) year prior to the filing of this Complaint.

91. The Defendants represented to the Plaintiffs that the Defendants were contractors adequately licensed with the State of Tennessee to enter into an agreement to construct a residential structure for $360,000.00.

92. The Defendants represented to the Plaintiffs that the Defendants were contractors adequately licensed with the State of Tennessee to perform all work necessary to complete the construction of the residential structure contemplated in the parties' agreement.

93. The Defendants held themselves out as being properly licensed contractors with adequate monetary limits and duly authorized by law to perform construction contracting services.

94. The Defendants were not licensed contractors, as defined in the Tennessee Contractor's Licensing Act, TENN. CODE ANN. § 62-6-101 et seq., or as contemplated at TENN. CODE ANN. § 47-18-104(b)(35) and those statutes, regulations, and codes referenced therein.

95. The Defendants violated TENN. CODE ANN. § 47-18-104(b)(35) by entering into the Agreement with the Plaintiffs in excess of the limit of Defendants' license limits and by continuing to perform contracting services without an adequate license.

96. The Defendants violated TENN. CODE ANN. § 47-18-104(b)(47) by failing and/or refusing to provide the Plaintiffs in written form notices and information required by TENN. CODE ANN. § 47-18-104(b)(47(A), including by not limited to:

    a. Notice that it is a criminal offense for the person entering into the contract for home improvement services with a residential owner to do any of the prohibited acts set

12

        out in § 39-14-154(b), by writing out the text of each prohibited act, and providing the penalty and available relief for such;

    b. The true and correct name, physical address and telephone number of the Defendants; or

    c. Correct current or forwarding addresses

97. The Defendants' conduct, as set forth in the preceding paragraphs, also constitute violations of TENN. CODE ANN. § 47-18-104(b)(2)(5) and (7).

98. The Defendants willfully and knowingly committed the acts described in the preceding paragraphs and such acts constitute willful and knowing violations of the Tennessee Consumer Protection Act, as set forth at TENN. CODE ANN. § 47-18-109(a).

99. Plaintiffs suffered damages as a result of Defendants' violations of the Tennessee Consumer Protection Act.

100. The Plaintiffs are entitled to treble damages and reasonable attorney's fees and costs.

WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

(a) That process issue against Defendants and that they be required to appear and answer fully and truthfully the Complaint as its interests may appear within the time required by law;

(b) That the Plaintiffs be awarded judgment against Defendants for breach of contract in an amount to be proven at trial, but not less than $250,000.00;

(c) Alternatively, that the Plaintiffs be awarded judgment against Defendants for its negligence in an amount to be proven at trial, but not less than $250,000.00;

(d) That the Plaintiffs be awarded judgment against Defendants for damages incurred by the Plaintiffs as a result of misrepresentations made by Defendants in an amount to be proven at trial, but not less than $250,000.00;

(e) That the Plaintiffs be awarded damages, including treble damages and attorney fees and costs under the Tennessee Consumer Protection Act, in amounts to be proven at trial;

(f) That the Plaintiffs have judgment in their favor and against the Defendants for consequential and incidental damages, as may be appropriate, including costs, attorney fees and accrued interest, to the extent allowed by law, in amounts to be determined at trial.

(g) That the Plaintiffs be awarded the costs of this cause, including filing fees; and

(h) That the Plaintiffs be awarded any such other, further equitable and general relief to which the Court may deem they are entitled.

Respectfully submitted,

/s/W. Paul Whitt
W. PAUL WHITT, BPR. NO. 024793
J. MATT DRAKE, BPR. NO. 030479
LEWIS, THOMASON, KING, KRIEG & WALDROP
One Centre Square, Fifth Floor
620 Market Street
Knoxville, Tennessee 37901
(865) 546-4646
pwhitt@lewisthomason.com
mdrake@lewisthomason.com

*Attorneys for Plaintiffs Derek S. Carseni and Glenda P. Carseni*